IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CAPITAL LENDING, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civil No. 1:17-cv-00612-TSE-MSN |
| JOHN C. CARROLL, et al., | ) |
| Defendants. | ) |

## REPORT & RECOMMENDATION

This matter comes before the Court on Plaintiff's Motion for Default Judgment (Dkt. No. 21). Having reviewed the record and pleadings, the undersigned Magistrate Judge recommends entering default judgment in the Plaintiff's favor for the reasons that follow.

**I.  Background**

On May 26, 2017, Plaintiff Capital Lending, LLC, filed a Complaint to enforce the Guaranty of Payment of Performance ("Guaranty") made by Defendants John C. Carroll and Michael J. Ferraguto, Jr. *See* Compl. ¶ 1 (Dkt. No. 1). Plaintiff alleges that on or about December 22, 2009, it made a $690,000 commercial loan to Ocean Atlantic Corp. ("OAC"), a corporation of which Defendants are "direct and/or indirect owner[s.]" *Id.* ¶¶ 5–6; Ex. A at 1 (Dkt. No. 1-1). OAC executed a Commercial Loan Agreement, a Promissory Note, and a Pledge and Security Agreement. *See* Compl. ¶ 11; Exs. B-D (Dkt. Nos. 1-2–1-4). On December 29, 2009, Defendants executed the Guaranty in favor of Plaintiff, "unconditionally, absolutely, and irrevocably guarantee[ing] and promis[ing] the full payment of all monetary amounts and the full and faithful performance of all non-monetary obligations and responsibilities under the Loan Documents by Borrower to be paid and/or performed . . . ." Compl. ¶ 12; Ex. A at 1.

Defendants' monetary obligations were limited to a maximum of $500,000. Compl. ¶ 13; Ex. A at 1. OAC did not pay the principal and interest when due. Compl. ¶ 15.

On April 12, 2017, Plaintiff sent a letter to OAC and Defendants requesting payment due under the Note. *See id.* ¶ 16; Ex. E (Dkt. No. 1-5). Neither OAC nor Defendants had made any payment since September 25, 2015. Mem. of P. & A. in Supp. of Mot. for Default J. at 2 (Dkt. No. 22); Ex. A (Dkt. No. 22-1). As of May 23, 2017, the amount due and owed to Plaintiff was $1,280,306.67 ($469,100 principal plus $811,206.67 interest). Compl. ¶ 17. As of July 27, 2017, the interest had accrued to $834,010.15,[1] rendering the total amount due on the loan $1,303,110.15. Mem. of P. & A. in Supp. of Mot. for Default J. at 2; Ex. A (Dkt. No. 22-1). Plaintiff now seeks recovery of $500,000, exclusive of interest, fees (including attorney's fees), and costs from Defendants. *Id.* ¶¶ 28, 37.

## II. Procedural History

On June 29, 2017, Plaintiff's process server personally served Defendant John C. Carroll ("Mr. Carroll") (Dkt. No. 6). Mr. Carroll did not file a response within 21 days of receipt (*i.e.* July 20, 2017) (Dkt. No 13). On July 31, 2017, the Clerk entered a default as to Mr. Carroll (Dkt. No. 14). Beginning May 31, 2017, Plaintiff attempted to serve Defendant Michael J. Ferraguto, Jr. ("Mr. Ferraguto") at a Boston, Massachusetts address. *See* Affidavit of Due Diligence (Dkt. No. 16). The process server spoke to Mr. Ferraguto's son, who presented photo identification and said that his father did not live there. *Id.* On June 28, 2017, another process server attempted to serve Mr. Ferraguto at an Alexandria, Virginia address. *Id.* The individual who answered the door did not know of Mr. Ferraguto. *Id.* In early July, a process server spoke once again to Mr. Ferraguto's son who reported that his father lived in Palm Beach, Florida. *Id.*

---

[1] Though Plaintiff cites $834,010.14 as the interest amount, the actual sum of the unpaid interest is one cent higher. *See infra* at 8.

The process server was unable to find any location within Florida at which Mr. Ferraguto resides or had resided. *Id.* On July 24, 2017, a process server attempted to find Mr. Ferraguto on his yacht at Old Town Alexandria Harbor. *Id.* The dock master told the process server that neither Mr. Ferraguto nor his boat was known there. *Id.* The next day, the same agent attempted to locate Mr. Ferraguto on his yacht at Belle Haven Park and Marina. *Id.* He received the same response from the dock master. *Id.* On July 26, 2017, that agent attempted to find Mr. Ferraguto at the Washington Marina, and then on August 2, 2017 at the Herrington Harbor Marina South. *Id.* The agent found the slip for Mr. Ferraguto's boat at Herrington Harbor but not the boat itself. *Id.* An investigator for CSI Corporate Security and Investigations, Inc. also researched the U.S. Coast Guard Maritime Information Exchange and U.S. Coast Guard Vessel Search. He contacted the Maryland Department of Natural Resources, Florida Division of Motorist Services, and the Virginia Boating Commission to find Mr. Ferraguto's yacht, but Maryland, Florida, and Virginia advised that they could not determine the boat's location. Mem. of P. & A. in Supp. of Mot. for Default J. at 7; Stanec Aff. ¶ 12 (Dkt. No. 22-3). Attempts to find the boat's registration were unsuccessful. Mem. of P. & A. in Supp. of Mot. for Default J. at 8. Mr. Ferraguto's last known address in Alexandria is now inhabited by two other individuals. Affidavit of Due Diligence (Dkt. No. 16).

Due to its inability to locate Mr. Ferraguto, on August 4, 2017, Plaintiff's process server served him through Maria Ochoa, an agent authorized to accept service of process on behalf of the Office of the Secretary of the Commonwealth. *See* Affidavit of Service (Dkt. Nos. 16, 20).[2] Service of process on Mr. Ferraguto was effective on August 11, 2017 when the Secretary of the Commonwealth filed the Certificate of Compliance with the Court (Dkt. No. 15). Mr. Ferraguto

---

[2] On September 13, 2017, Plaintiff filed an amended Affidavit of Service as to Mr. Ferraguto that reflected the correct signature date for Karen L. Rice, the process server who served the Summons and pleadings on the Secretary of the Commonwealth of Virginia (Dkt. No. 20). Mem. of P. & A. in Supp. of Mot. for Default J. at 3 n.1. The Affidavits of Service are otherwise identical. *Compare* (Dkt. No. 16) *with* (Dkt. No. 20).

did not file a response within 21 days of receipt (*i.e.* September 1, 2017) (Dkt. No 18). On September 7, 2017, the Clerk entered a default as to Mr. Ferraguto (Dkt. No. 19).

## III. Service of Process, Jurisdiction, and Venue

The docket reflects that Mr. Carroll and Mr. Ferraguto have been properly served pursuant to Federal Rule of Civil Procedure 4(e)(2)(A) and Va. Code § 8.01-329(B)(ii), respectively. *See* Summons Return Executed (Dkt. Nos. 6, 15–16). Plaintiff asserts that "by all accounts [Mr. Ferraguto] is a resident of" Virginia,[3] and pursuant to Va. Code § 8.01-329(B), Plaintiff's counsel certified "that process [was] delivered to the sheriff or to a disinterested person . . . for execution[,]" and that the sheriff or disinterested person "made a bona fide attempt to determine the actual place of abode or location of the person to be served" (Dkt. Nos. 15–16). *See* Mem. of P. & A. in Supp. of Mot. for Default J. at 5.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiff is seeking damages in excess of $75,000, exclusive of interest and costs, and the Parties are citizens of different states. *Id.* at 4. Plaintiff is a citizen of Utah and Idaho, where its headquarters and principal place of business are located, and Plaintiff alleges in its Memorandum in Support of its Motion for Default Judgment that Defendants are citizens of Virginia.[4] *Id.*

This Court also has personal jurisdiction over Defendants. As stated in the Complaint, Mr. Carroll is a citizen of Virginia, and his principal place of employment is in Virginia. *See*

---

[3] Plaintiff supports this assertion with an affidavit from an investigator with CSI Corporate Security and Investigations, Inc. who provided Mr. Ferraguto's most recent address as OAC's commercial office space in Alexandria, Virginia, the same address listed on the Loan Agreement for OAC and Defendants. *See* Stanec Aff. ¶ 7 (Dkt. No. 22-3); Ex. 3 at 58, 61, 67, 69–72 (Dkt. No. 22-2); Ex. B at 23–24 (Dkt. No. 1-2). Plaintiff also filed with the Court Mr. Ferraguto's Facebook profile, which lists his residence as Alexandria, Virginia as of September 14, 2017. *See* Ex. 4 (Dkt. No. 22-2); Stanec Aff. ¶ 10; Shaw Aff. ¶ 6 (Dkt. No. 22-2). Mr. Ferraguto commented on one of his Facebook photos on June 20, 2017, stating that he was "up in the Chesapeake." Ex. 4 (Dkt. No. 22-2).

[4] According to Mr. Ferraguto's son, Mr. Ferraguto is a citizen of Florida; however, the process server's last known address for Mr. Ferraguto is one in Virginia. *See* Affidavit of Due Diligence (Dkt. No. 16). Separately, Plaintiff asserted in its Complaint that Mr. Ferraguto's principal residence is in Boston, Massachusetts. *See* Compl. ¶ 5. Either way, the Parties are still citizens of different states.

Compl. ¶ 6.  Plaintiff also served Mr. Carroll in Virginia, which renders him subject to this Court's jurisdiction.  *See* Summons Returned Executed (Dkt. No. 6).  Moreover, under Virginia's long-arm statute, this Court may exercise personal jurisdiction over Defendants "as to a cause of action arising from" them "[t]ransacting any business in this Commonwealth."  Va. Code § 8.01-328.1(A)(1); *see, e.g.*, *Dunham v. Hotelera Canco S.A. de C.V.*, 933 F. Supp. 543, 553 (E.D. Va. 1996).  "A single act of business will suffice if the action arises from that same transaction."  *Dunham*, 933 F. Supp. at 553 (citing *Unidyne Corp. v. Aerolineas Argentinas*, 590 F. Supp. 391, 396 (E.D. Va. 1984)).  "Arising from" means that there is "a causal link between the acts relied on for personal jurisdiction and the cause of action asserted."  *Id.* (citing *Chedid v. Boardwalk Regency Corp.*, 756 F. Supp. 941, 943 (E.D. Va. 1991)).

  Here, Plaintiff's cause of action arose from its loan to a Virginia corporation whose Guarantors—Defendants Carroll and Ferraguto—promised payment of the loan if the corporation defaulted.  Compl. ¶¶ 4, 12; Ex. A (Dkt. No. 1-1); Ex. B at 1 (Dkt. No. 1-2).  Because the litigation commenced after Defendants failed to pay the amount due under the Note pursuant to the Guaranty, there is a causal link between Defendants' transaction of business in Virginia—promising payment of a loan on behalf of their Virginia corporation—and the lawsuit that followed.  For this reason, this Court has personal jurisdiction over both Defendants, even though Mr. Ferraguto may not be a citizen of Virginia.  *See, e.g.*, *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 293 (4th Cir. 2009) (citing *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002); *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315, 319 (1999) (noting that both state and federal courts have interpreted Virginia's long-arm statute to apply to nonresident defendants)).  Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim against Defendants occurred within the Eastern District of Virginia.  *See* Compl. ¶¶ 4, 9.

**IV.     Legal Standard**

Default judgment is appropriate if the well-pled allegations of the complaint establish that the plaintiff is entitled to relief and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985). By defaulting, the defendant admits the plaintiff's well-pled allegations of fact, which then provide the basis for judgment. *See Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, No. 2:15-cv-451, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)). Here, because Defendants have not answered or otherwise timely responded, the well-pled allegations of fact contained in the Complaint are deemed to be admitted.

**V.     Analysis**

Having examined the record, the undersigned Magistrate Judge finds that the well-pled allegations of fact contained in the Complaint, and supported by Plaintiff's Motion for Default Judgment and Memorandum in Support of Motion for Default Judgment, establish that Defendants breached the Guaranty. Plaintiff is therefore entitled to default judgment in its favor as detailed below.

### A. Unpaid Principal and Interest

Plaintiff alleges that Defendants breached the Guaranty by failing to repay Plaintiff for the loan to OAC once OAC defaulted. *See* Compl. at 5–7. The Guaranty specifies that it "shall be governed by, and construed in accordance with the laws of the State of Utah[.]" Ex. A ¶ 11 at 5 (Dkt. No. 1-1). Under Utah law, "the elements of breach of contract are: (1) a contract, (2) performance by the party seeking recovery, (3) breach of contract by the other party, and (4) damages." *Columbia Cas. Co. v. SMI Liquidating, Inc.*, 909 F. Supp. 2d 1303, 1319 (D. Utah 2012) (citing *Bair v. Axiom Design, LLC*, 20 P.3d 388, 392 (Utah 2001)).

First, because Defendants executed the Guaranty, they owed a legal duty to Plaintiff to pay $500,000 once OAC defaulted. Compl. ¶ 12; Ex. A ¶ 1 at 1. Plaintiff has therefore shown the first element of a claim for breach of contract under Virginia law—Defendants' legally enforceable obligation to Plaintiff. *See* Compl. ¶¶ 22, 31. Second, accepting as true the allegations in Plaintiff's Complaint, *see Ryan*, 253 F.3d at 780, Plaintiff loaned OAC $690,000 on or about December 22, 2009, demonstrating the second element of a claim for breach of contract—Plaintiff's required performance prior to seeking recovery. *Id.* ¶¶ 23, 32. Third, OAC failed to make payment in full to Plaintiff, and Defendants did not satisfy OAC's obligations under the Guaranty. *Id.* ¶¶ 18, 24, 33. In light of the above, Plaintiff has shown the third element of a claim for breach of contract—that Defendants failed to honor their obligations under the contract. Finally, as a result of Defendants' breach of the Guaranty, Plaintiff has suffered damages. *Id.* ¶¶ 26, 35. Plaintiff asserts that Defendants have "no legally recognized justification or excuse for breaching the Guaranty." *Id.* ¶¶ 25, 34.

Because the Guaranty limited the amount Defendants would owe in the event of default, Plaintiff only seeks a maximum of $500,000 from Defendants. *Id.* ¶¶ 28, 37; Mem. of P. & A. in Supp. of Mot. for Default J. at 10–11; Ex. B ¶ 4.16 (Dkt. No. 1-2). Plaintiff states that as of July

27, 2017, the total amount due on the loan is $1,303,110.14. *See supra* at 2 n.1; Mem. of P. & A. in Supp. of Mot. for Default J. at 11; Strickland Aff. ¶ 6 (Dkt. No. 22-1). On September 24, 2015, OAC made its last payment to Plaintiff. Ex. A (Dkt. No. 22-1). At that time, the unpaid principal balance was $466,100.00. *Id.*

Since Defendants guaranteed to pay "all monetary amounts[,]" they are also responsible for paying interest owed on the loan. *See* Ex. A at 1 (Dkt. No. 1-1). According to the Commercial Loan Agreement, the prescribed interest rate is 25 percent per year, and interest is to be calculated based on a 360-day year. Ex. B. at 3 (Dkt. No. 1-2); Ex. C at 1 (Dkt. No. 1-3). Given the 25 percent interest rate, unpaid interest is calculated as follows:

- (Number of days between payments or since loan was given) / (360-day year) x .25 x unpaid principal balance

| Payment Date | Unpaid Principal Balance | Interest Rate | No. of Days Between Payments | Unpaid Interest | Principal Paid |
|---|---|---|---|---|---|
| 1/21/10 | $129,700 | 25% | 30 | $2,702.08 | ($129,700) |
| 2/17/10 | $189,700 | 25% | 27 | $3,556.88 | ($60,000) |
| 3/15/10 | $276,100 | 25% | 26 | $4,985.14 | ($86,400) |
| 6/1/10 | $286,100 | 25% | 78 | $15,497.08 | ($10,000) |
| 6/8/10 | $296,100 | 25% | 7 | $1,439.38 | ($10,000) |
| 6/29/10 | $301,100 | 25% | 21 | $4,391.04 | ($5,000) |
| 12/15/10 | $326,100 | 25% | 169 | $38,271.46 | ($25,000) |
| 9/8/11 | $426,100 | 25% | 267 | $79,006.04 | ($100,000) |
| 5/8/12 | $436,000 | 25% | 243 | $73,591.88 | ($10,000) |
| 6/13/13 | $446,100 | 25% | 401 | $124,226.46 | ($10,000) |
| 4/25/14 | $456,100 | 25% | 316 | $100,088.61 | ($10,000) |
| 9/25/15 | $466,100 | 25% | 518 | $167,666.53 | ($10,000) |
| 7/27/17 | $469,100 | 25% | 671 | $218,587.57 | ($3,000) |

Ex. A (Dkt. No. 22-1).

Based on these calculations, the unpaid interest from January 21, 2010–July 27, 2017 amounts to $834,010.15. Because the Guaranty limits Defendants' monetary obligations to $500,000, the undersigned recommends an award of that amount in Plaintiff's favor. *See* Ex. A at 1 (Dkt. No. 1-1).

### B. Attorney's Fees and Costs

Plaintiff also makes reference to both attorney's fees and costs in its Motion for Default Judgment, Complaint, and Guaranty. *See* Compl. ¶¶ 17, 26, 28, 35, 37; Mem. of P. & A. in Supp. of Mot. for Default J. at 10–11; Ex. B ¶ 7.1 (Dkt. No. 1-2). Because of the Guaranty limitation, however, $500,000 is the maximum amount that this Court can award Plaintiff and that Plaintiff has requested. *See* Mem. of P. & A. in Supp. of Mot. for Default J. at 11; Ex. A at 1 (Dkt. No. 1-1). Since the unpaid interest alone exceeds $500,000, this Court need not consider either attorney's fees or costs.

### VI. Recommendation

For the foregoing reasons, the undersigned recommends GRANTING Plaintiff's Motion for damages in the amount of $500,000, whereby Plaintiff may collect that amount from either Defendant.

### VII. Notice

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to Defendants at their address for service of process, the parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

October 3, 2017
Alexandria, Virginia

9